IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**ROBERT DENARD POLLARD,**

    **Petitioner,**

v.                                    **Case No. 5:18-cv-01209**

**D. L. YOUNG, Warden,**
**FCI Beckley,**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On August 6, 2018, Petitioner, proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Pending is Respondent's Motion to Dismiss, (ECF No. 12), in which he argues that the petition for habeas relief should be denied as moot. Having reviewed the matter, the undersigned agrees with Respondent. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the Motion to Dismiss, (ECF No. 12); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1), and remove this matter from the docket of the Court.

**I.**    **Relevant Facts**

On September 8, 1998, Petitioner, Robert Denard Pollard ("Pollard"), entered into

1

a plea agreement in which he admitted that he was guilty of committing a bank robbery in violation of 18 U.S.C. § 2113(a). *United States v. Pollard*, 1:98-cr-00207-JAB (M.D.N.C. July 1998) at ECF No. 14. Pollard was sentenced in the United States District Court for the Middle District of North Carolina ("District Court") on March 1, 1999. *Id.* at ECF Nos. 23, 24. Pollard received a term of imprisonment of 67 months, which was set to run concurrently, at least in part, with a state court sentence Pollard was then presently serving. His sentence of imprisonment was to be followed by a 3-year period of supervised release. *Id.*

Pollard was released from the custody of the Federal Bureau of Prisons ("BOP") on February 18, 2004. (ECF No. 9-1 at 7). On April 3, 2004, Pollard was taken into custody by state law enforcement officials in Forsyth County, North Carolina for various offenses of state law. (*Id.* at 10). On April 23, 2004, the District Court issued an arrest warrant for Pollard due to his violation of the terms of his supervised release. *Pollard*, 1:98-cr-00207-JAB at ECF No. 27, 28.

On August 24, 2004, following a jury trial, Pollard was convicted in the Superior Court of Forsyth County, North Carolina ("Sentencing Court") of felonious assault with deadly weapon resulting in a serious injury, in violation of N.C. Gen. Stat. Ann. § 14-32(b), and attempted robbery with a dangerous weapon, in violation of N.C. Gen. Stat. Ann. § 14-87. (*Id.* at 12-13). Pollard received a minimum term of imprisonment of 163 months, with a maximum of 215 months imprisonment. (*Id.*). The Sentencing Court further indicated that Pollard's sentence was to commence "at expiration of Federal bank robbery case# 1:98CR207-l." (*Id.* at 14).

On September 2, 2004, the District Court issued an Order, indicating that Pollard's state criminal convictions constituted violations of the conditions of his federal

2

supervised release. *Pollard*, 1:98-cr-00207-JAB at ECF No. 29. On December 1, 2004, the District Court issued a Writ of Habeas Corpus ad Prosequendum as to Pollard. *Id.* at ECF Nos. 30, 31. Respondent has provided an Individual Custody/Detention Report prepared by the United States Marshals Service, which shows that Pollard was arrested and taken into federal custody on December 13, 2004. (ECF No. 9-1 at 20-21).

On December 17, 2004, a hearing was held in the District Court regarding Pollard's violation of the terms of his supervised release. *Pollard*, 1:98-cr-00207-JAB at ECF No. 32 at 1. On January 7, 2005, the District Court entered a Sentencing Order revoking Pollard's term of supervised release, and sentencing him to a 24-month term of imprisonment. *Id.* The Order further provided that "this sentence shall commence at the expiration of any undischarged sentence [Pollard] is presently serving." *Id.*

Pollard appealed his sentence to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on January 11, 2005. *Id.* at ECF No. 33. The Individual Custody and Detention Report provided by Respondent indicates that Pollard was released from federal custody on January 20, 2005. (ECF No. 9-1 at 22-23). The Fourth Circuit affirmed Pollard's sentence in an unpublished opinion issued August 1, 2005. *Pollard*, 1:98-cr-00207-JAB at ECF No. 39. The Fourth Circuit concluded that the sentence was not unreasonable, and the hearing held by the District Court comported with the necessary due process requirements. *Id.* at 2.

On December 20, 2005, the Court of Appeals of North Carolina (Appellate Court") issued an opinion denying Pollard's challenges to his convictions, but remanding the case for resentencing. *See State v. Pollard*, 175 N.C. App. 249 2005 WL 3469155 *1 (2005). The Appellate Court dismissed Pollard's claims related to various errors he asserted occurred during his trial, but determined that the sentencing court had erred in setting

3

his sentence to commence following the expiration of a federal sentence, which had not yet been activated. *Id.* at *2-7. The Appellate Court accordingly remanded the case for resentencing as to the date of commencement of Pollard's sentences. *Id.* at *7.

While Respondent did not include documents related to the underlying re-sentencing procedures, state court records provided by Respondent reveal that Pollard was resentenced on February 28, 2006, to a term of imprisonment identical to that imposed in the initial sentencing proceeding. (ECF No. 9-1 at 17, 27-29). Pollard was credited 697 "County Jail Credits" to his new sentences. (*Id.* at 17). There were 697 days between April 3, 2004, the date Pollard was incarcerated on his state charges, and February 28, 2006, the date his sentences for those charges officially commenced.

On November 27, 2012, an employee of the BOP sent a letter informing the District Court that Pollard, at that time still incarcerated in state prison, had requested his federal sentence be set to run concurrently with the state sentence he was then serving. (*Id.* at 42). The BOP inquired if the District Court had a position as to Pollard's request, which would have the effect of retroactively reducing Pollard's assigned sentence. (*Id.* at 43). The District Court responded on December 11, 2012, informing the BOP that the District Court believed the BOP was "in the best position to determine whether [Pollard] should receive any benefit which would serve to reduce his overall sentence," and that the District Court "expresses no opinion either way" with respect to Pollard's request. (*Id.* at 41). On December 26, 2012, the BOP informed Pollard that it had considered his request for credit toward his federal sentence for time served in state custody as a request for a *nunc pro tunc* or retroactive designation, and declined to grant the request. (*Id.* at 38-39).

On January 18, 2013, Pollard sent a letter to the District Court asking that its change its position with respect to Pollard's request that his federal sentence be reduced.

4

*Pollard*, 1:98-cr-00207-JAB at ECF No. 42 at 1. On January 27, 2014, Pollard sent a second letter to the District Court, asking that it award Pollard credit for time served in state custody against his federal sentence, and allow his federal sentence to run concurrently with his state sentence. *Id.* at ECF No. 43 at 1. On March 10, 2014, the United States filed a response in opposition to Pollard's request. *Id.* at ECF No. 44. On May 16, 2014, the District Court entered an Order denying Pollard's request. *Id.* at ECF No. 45. The District Court noted that Pollard had "not cited to any statute or rule that authorizes the [District Court] to modify [Pollard's] Judgment and Commitment … to allow his term of imprisonment for his supervised release violation to run concurrently to his state sentence, over nine years after the [District Court] issued [Pollard's] Judgment." *Id.* at 3.

Pollard was released from state custody and began serving his federal sentence on October 21, 2017. (ECF No. 9-1 at 3, 20, 28, 35). On March 5, 2018, Pollard filed a Petition to Grant Jail Credit Mandated by Court and General Rules in the District Court. *Pollard v. United States*, 1:18-cv-00167-NCT-JLW (M.D.N.C. March 2018) at ECF No. 1. Pollard asserted that he spent eight months, from April 26 through December 17, 2004, on a federal detainer while incarcerated in the Forsyth County Detention Center, and that the BOP had failed to credit this time against the federal sentence he received. *Id.* at 2-3. On March 7, 2018, a United States Magistrate Judge issued an Order and Recommendation, recommending that Pollard's petition be dismissed as it was in substance a § 2241 petition and Pollard had not used the proper forms or submitted a filing fee or application to proceed *in forma pauperis*. *Id.* at ECF No. 2 at 1. On May 2, 2018, the District Court adopted the Order and Recommendation, dismissing Pollard's petition. *Id.* at ECF No. 4.

On August 6, 2018, Pollard filed the instant § 2241 petition. (ECF No. 1). In the instant petition, Pollard contends that he was in federal custody from December 2004

5

until March 2005, and this time in custody should be applied to his federal sentence as the state court failed to credit the time against his state sentences. (*Id.* at 7). Pollard requests that this Court enter an order instructing the BOP to offset this time served against his federal sentence. (*Id.*).

On October 5, 2018, Respondent submitted a Response to Order to Show Cause. (ECF No. 9). Respondent requests that this Court dismiss Pollard's petition. Respondent first argues that the petition should be dismissed as Pollard neglected to properly exhaust his administrative remedies. (*Id.* at 3). Respondent asserts that Pollard has not submitted any grieveances with regard to the claim he brings in his petition, and Respondent attaches documents in support. (ECF Nos. 9 at 4; 9-1 at 45-46). Respondent additionally contends that, contrary to Pollard's assertion, "all of the time [Pollard] spent in custody prior to the commencement of his federal sentence was credited against his state sentence." (*Id.* at 6). Accordingly, Respondent asks this Court to deny Pollard's request. (*Id.* at 9).

Pollard submitted a Response to Respondent's filing on November 5, 2018. (ECF No. 11). Pollard asserts that Respondent has mischaracterized the record in that he fails to acknowledge that Pollard's sentence was vacated by the North Carolina Court of Appeals, leading to his resentencing in 2006. (*Id.* at 3). Pollard contends that when he was resentenced, the Sentencing Court failed to credit his sentence for the three months between December 2004 and March 2005 that he spent in federal custody. (*Id.*). Pollard concedes that he never attempted to pursue this claim by utilizing the BOP's administrative remedial process, but believes his failure to do so should be excused as he only became aware of this claim in March 2018 and was thus "in a race against time." (*Id.* at 2). Pollard asserts that submitting this claim through the BOP's administrative remedy

6

process would have been "futile," because it would have taken too long. (*Id.*). Pollard asks the Court to grant his petition and credit his federal sentence with the three months he spent in federal custody. (*Id.* at 4).

On August 20, 2019, Respondent submitted the pending Motion to Dismiss, arguing that Pollard's July 18, 2019 release from prison has mooted his petition. (ECF No. 12 at 1). Respondent attaches an affidavit prepared by Tiffanie Little, Legal Assistant for the BOP Mid-Atlantic Regional Office, in which Ms. Little confirms that Pollard was released from custody on July 18, 2019 based on a good time credits calculation. (ECF No. 12-1 at 1). On August 20, 2019, the undersigned entered an Order directing Pollard to file a response to Respondent's motion to dismiss within 30 days of the date of service of the Motion to Dismiss. (ECF No. 13). The Order was not delivered to Pollard, however, because he had been released from custody and did not provide a forwarding address. (ECF No. 17).

## II.     Standards of Review

Although Respondent does not state under which rule he brings the motion to dismiss for mootness, given the stage of the proceedings and nature of the arguments presented, it is best understood as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a

7

factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the petitioner, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion to dismiss under Rule 12(b)(1) is the appropriate avenue by which to raise the issue of mootness, because mootness deprives a federal court of jurisdiction under Article III of the United States Constitution. *See Justice v. Acosta*, No. 2:17-CV-03681, 2018 WL 4291744, at *3 (S.D.W. Va. Sept. 7, 2018); *see also Estate of Peeples v. Barnwell Cty. Hosp.*, No. CIV.A. 1:13-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 18, 2014) (collecting cases). Here, Respondent is bringing a factual challenge to this Court's jurisdiction over Pollard's petition, alleging that subsequent developments have removed the factual basis for jurisdiction. As such, this Court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *See L.K. ex rel. Henderson v. N. Carolina State Bd. of Educ.*, No. 5:08-CV-85-BR, 2011 WL 861181, at *4 (E.D.N.C. Feb. 18, 2011), *report and recommendation adopted*, No. 5:08-CV-00085-BR, 2011 WL 861154 (E.D.N.C. Mar. 9, 2011).

Respondent additionally did not discuss in the Response under which rule's authority he seeks to have Pollard's petition be dismissed. (ECF No. 9) Presumably, this

8

request for dismissal is brought under Federal Rule of Civil Procedure 12(b)(6). Because Respondent filed an answer concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176,

180 (4th Cir. 2009).

### III. Discussion

#### A. Exhaustion

Although § 2241 does not itself contain an exhaustion prerequisite, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490–91 (1973); *see also McClung v. Shearin,* No. 03–6952, 2004 WL 225093, at *1 (4th Cir. Feb.6, 2004) (citing *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001)). The court may, in its discretion, waive exhaustion under certain circumstances, such as "where a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden,* Civil Action RDB–10–671, 2010 WL 1258181, * 1 (D. Md. Mar. 24, 2010).

The BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, provides a process by which an inmate can seek review of an issue relating to any aspect of his or her confinement. With certain exceptions, an inmate must first present the issue of concern informally to a BOP staff member within the procedures prescribed by the warden of the institution in which the inmate is confined. *Id.* at § 542.13. An inmate can then file a formal written Administrative Remedy Request on the specified form. *Id.* at § 542.14. If the inmate is unsatisfied with the warden's response to the request, the inmate can appeal the decision to the appropriate regional director and can then appeal the response of the regional director to the general counsel. *Id.* at § 542.15. The administrative remedy request and appeals must comply with the requirements specified by the BOP. *Id.* at §§ 542.14, 542.15.

Pollard does not dispute that he failed to utilize the administrative grievance procedure provided by the BOP; instead, he contends that it would have been "futile" to do so because the process would have taken too long. (ECF No. 11 at 2). Pollard asserts that, because he only became aware of the BOP's error in calculating his sentence in May 2018, if he had not side-stepped the exhaustion requirement and immediately filed his federal habeas petition, he "would have never had the opportunity to enjoy the benefit of this court's decision to award that jail credit requested and halfway house placement." (*Id.*).

The Fourth Circuit has stated that an inmate's failure to exhaust his or her administrative remedies before filing a § 2241 petition "may only be excused upon a showing of cause and prejudice." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004). This Court has excused a § 2241 petitioner's failure to exhaust his administrative remedies on the basis of futility. *Larue v. Adams*, No. 1:04-0396, 2006 WL 1674487, at *8–9 (S.D.W. Va. June 12, 2006); *see also Bost v. Adams*, No. 1:04-0446, 2006 WL 1674485, at *6-7 (S.D.W. Va. June 12, 2006). Other courts in this circuit have excused exhaustion when "the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v*. No. CIV.A. RDB-10-671, 2010 WL 1258181, at *1. However, exhaustion should only be excused "in rare cases where exceptional circumstances of peculiar urgency are shown to exist." *Id*. (quoting *Rose v. Lundy*, 455 U.S. 509, 515–516 (1982)).

While the question of exhaustion, if disputed, is not generally amenable to disposal by way of a motion to dismiss, *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017), when it is clear on the face of the filings that a movant failed to comply with the exhaustion

11

requirement, dismissal on this ground may be appropriate. *See Lamerique v. United States*, No. 3:18-CV-00532, 2019 WL 2932673, at *10 (S.D.W. Va. June 14, 2019), *report and recommendation adopted*, No. CV 3:18-0532, 2019 WL 2929035 (S.D.W. Va. July 8, 2019). Here, Pollard admits that he did not make any effort to administratively challenge his sentence calculation, nor does he assert that he was prevented from doing so; instead, Pollard relies on his belief that it was unnecessary to proceed through the administrative remedial process, because the time it would take to complete the process could have prevented him from being able to bring this petition in federal court. (ECF No. 11 at 2). This is an insufficient reason to excuse exhaustion.

In a similar context, "[d]istrict courts have found that exhaustion should not be excused on the basis that an inmate believes that the length of the exhaustion process will prevent the inmate from receiving a full [halfway house] placement." *Warner v. Bragg*, No. CV 9:19-344-MGL-BM, 2019 WL 2016812, at *5 (D.S.C. Apr. 12, 2019), *report and recommendation adopted*, No. CV 9:19-344-MGL-BM, 2019 WL 2009300 (D.S.C. May 7, 2019). Similarly, exhaustion has not be excused simply because the petitioner's believes that the length of the administrative process would preclude him from receiving full relief. *Hughes v. Coakley*, No. CV 5:15-08088, 2016 WL 744941, at *3 (S.D.W. Va. Feb. 3, 2016), *report and recommendation adopted*, No. 5:15-CV-08088, 2016 WL 742121 (S.D.W. Va. Feb. 24, 2016); *also Ferguson v. Saad*, No. CV 1:18-00394, 2019 WL 1410892, at *1 (S.D.W. Va. Mar. 28, 2019) (same). As a district court in this circuit explains, granting review of inmate release claims because of "time-sensitivity" will encourage the filing of similar petitions before the administrative remedy process has run its course, which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims." *Garrison v. Stansberry*, No. 2:08cv522, 2009 WL

1160115, * 3 (E.D. Va. Apr. 29, 2009).

Accordingly, the undersigned **FINDS** that Pollard failed to properly exhaust his claim, and this failure should not be excused simply because Pollard believed that the administrative remedial process would take too long.

### B. Mootness

As a prerequisite to the exercise of federal jurisdiction, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual … events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation … must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Action by a defendant that simply accords all the relief demanded by the plaintiff may moot an action." *W. Virginia Highlands Conservancy v. Norton*, 161 F. Supp. 2d 676, 679 (S.D.W. Va. 2001) (citing 13A Federal Practice and Procedure § 3533.2). A case becomes moot, and accordingly no longer falls within the court's subject matter jurisdiction, when it is "impossible for a court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)).

It is well-settled that a prisoner must be in custody at the time he brings a petition

13

for a writ of habeas corpus. *Leonard v. Hammond,* 804 F.2d 838, 842 (4th Cir. 1986). Although his subsequent release will not deprive the court of subject matter jurisdiction, "[t]he question of mootness is separate and distinct from the jurisdictional issue." *Id.* Generally, the transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *Incumaa v. Ozmint,* 507 F.3d 281, 286–87 (4th Cir.2007). Therefore, when a federal prisoner files a habeas corpus petition seeking injunctive relief from a sentence, his release from custody may render the petition moot.

There are two exceptions to the mootness doctrine. *Leonard,* 804 F.2d at 842. First, under the "collateral consequences" exception, a habeas petition is not rendered moot after a petitioner is released from custody where the petition challenges collateral consequences that continue after expiration of the sentence. *Id.* (citing *Carafas v. LaVallee,* 391 U.S. 234 (1968)). For example:

> [w]here the criminal conviction ... results in the continued denial of important civil rights, such as the right-to-vote or the right to be considered for jury duty, the claim for habeas relief will remain a live controversy even after the prisoner has been released from custody. Similarly, where the criminal conviction may result in an enhanced sentence should the petitioner later be convicted of another crime, h[is] stake in habeas relief permits the court to exercise its judicial freedom long after [ ] he has been freed.

*Broughton v. State of N.C.,* 717 F.2d 147, 148-49 (4th Cir. 1983) (internal citations omitted). Second, the "capable of repetition, yet evading review" exception prevents a petition from becoming moot when two elements are present: (a) the challenged action is too short in duration to be fully litigated before it ceases or expires, and (b) there is a reasonable expectation that the same petitioner will be subjected to the same wrongful action again. *Leonard,* 804 F.2d at 842 (citing *Weinstein v. Bradford,* 423 U.S. 147, 149

14

(1975)).

In this case, neither exception applies. Pollard has been released from prison and is not serving a term of supervised release.[1] Where a petitioner raises a challenge to either their sentence or conviction, the expiration of their sentence and the absence of a term of supervised release—or some other identifiable collateral consequence—will render their petition moot. *See United States v. Julian*, 751 F. App'x 378, 380 (4th Cir. 2018); *see also United States v. Cowan*, 777 F. App'x 74 (4th Cir. 2019) ("Because [the defendant] has served his eight-month sentence and faces no further term of supervised release, there is no longer a live controversy … [The defendant's] challenge to his sentence is therefore moot."). The second exception, regarding challenged actions which are capable of repetition yet evading review, likewise is not applicable. As Pollard has been released from custody, "there is no reasonable expectation that [he] will be incarcerated again and face the same set of circumstances in the future." *Maultsby v. Rickard*, No. 1:17-CV-04612, 2018 WL 4289648, at *2 (S.D.W. Va. June 29, 2018), *report and recommendation adopted*, No. CV 1:17-04612, 2018 WL 4291740 (S.D.W. Va. Sept. 6, 2018). Given Pollard's release from custody, there is no further relief that this Court can grant based on this petition. The undersigned therefore **FINDS** that Pollard's release from prison and the absence of any term of supervised release or other identified collateral consequence renders his § 2241 petition moot.

### C. Merits

Even assuming that Pollard's petition was not both mooted by his release from

---

[1] The undersigned contacted the United States Probation Office for the Middle District of North Carolina and was informed by Probation Office staff that Pollard is no longer serving a term of supervised release. Probation Office staff additionally provided an updated address for Pollard.

prison, and subject to dismissal for his failure to exhaust, his contention that he served three uncredited months in federal custody is refuted by the record. As an initial matter, Pollard's assertion that he spent three months in federal custody, from December 2004 until March 2005, is not supported by the Individual Custody/Detention Report prepared by the United States Marshals Service, which demonstrates that Pollard was released from federal custody on January 20, 2005. (ECF No. 9-1 at 22-23). Pollard does not dispute the authenticity of any of the documents submitted by Respondent.

More critically, however, the record does not corroborate Pollard's assertion that the time he spent in federal custody with regard to his supervised release violation was not credited against any sentence. A defendant convicted of a federal crime has a right under 18 U.S.C. § 3585(b) to receive credit for certain time spent in official detention before his sentence begins. Specifically, § 3585(b) provides that:

> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

18 U.S.C.A. § 3585(b) (emphasis added). Here, when Pollard was resentenced in state court on February 28, 2006, he received 697 days of county jail credits. (ECF No. 9-1 at 17, 48). There were 697 days between April 3, 2004, the date Pollard was first incarcerated on his state charges, and February 28, 2006. Accordingly, and contrary to Pollard's assertion that the period of time from December 2004 through March 2005 was not credited against any sentence, the state court records clearly show that Pollard received

credit against his state sentence for the *entire time* he spent in custody between April 3, 2004 and February 28, 2006. Obviously, that time frame includes December 2004 through March 2005.

As the records related to Pollard's state custody convincingly show that the time he spent in federal custody was credited against his state sentence, his argument that the BOP erred in not applying that time to his federal sentence is unavailing. Therefore, the undersigned **FINDS** that Pollard was not entitled to a sentence reduction by the BOP.

### IV. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that:

1. Respondent's Motion to Dismiss, (ECF No. 12), be **GRANTED**;

2. Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DISMISSED**; and

3. This case be removed from the Court's docket.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute

a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner at **1544 Woodcliff Drive, Winston-Salem, North Carolina 27106**, and to counsel of record.

**FILED:** December 11, 2019

Cheryl A. Eifert
United States Magistrate Judge